IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|                                                      ) | |
| Plaintiff,    ) | |
|                                                      ) | |
| vs.                                              ) | Case No. 03-cr-30196-MJR |
|                                                      ) | |
| AMAD SHOJAEI ZAMBRANA,    ) | |
|                                                      ) | |
| Defendant.    ) | |

# MEMORANDUM & ORDER

**REAGAN, District Judge:**

### Introduction and Procedural History

On April 19, 2004, this Court granted a suppression motion in favor of Defendant Amad Zambrana (*see* Doc. 42).  The Government appealed that decision to the United States Court of Appeals for the Seventh Circuit.  The case now returns to this Court on its second remand from the Court of Appeals.

The first remand occurred March 3, 2005 when the Court of Appeals granted a "Joint Limited Motion for Remand" filed by both parties.  At that time, the Seventh Circuit ordered this Court to consider whether the credibility of the Government's main witness in the suppression hearing – Collinsville, Illinois police officer Michael Reichert – was affected by evidence that Reichert was under criminal investigation for allegedly selling counterfeit Oakley sunglasses. The information regarding that investigation did not come to light until *after* this Court entered its suppression order.  After briefing and argument, this Court ruled its credibility assessment would not be affected by the undeveloped allegations against Reichert.  The case was then returned to the Seventh Circuit.

The second and current remand results from that Court's opinion, dated October 31, 2005, in which the Seventh Circuit vacated this Court's decision suppressing evidence and statements and remanded this case for further proceedings. *See United States v. Zambrana,* **No. 04-2311, slip. op. (7th Cir. Oct. 31, 2005).**

## Background

Charged in this Court with possession with intent to distribute heroin and possession with intent to distribute cocaine hydrochloride, in violation of **21 U.S.C. § 841(a)(1) and (b)(1)(C)**, Zambrana pled not guilty. The charges were filed after a police search of the vehicle driven by Zambrana, in which co-Defendant Babar Shah[1] was a passenger, revealed heroin and cocaine.

At a suppression hearing held March 8, 2004, Zambrana moved to suppress the narcotics removed from the rental vehicle he was driving, statements made by Zambrana and Shah to the arresting police department, and any live testimony that Shah would have given at trial.

On April 19, 2004, this Court issued an Order (Doc. 42) granting in part and denying in part Zambrana's motion to suppress. This Court concluded that although the arresting officer, Reichert, had probable cause to stop Zambrana's car, Reichert did not have reasonable articulable suspicion to detain the car for a canine-unit sniff. Accordingly, this Court suppressed the narcotics, statements, and testimony resulting from this detention and search. As mentioned, the Government appealed this decision, and the Seventh Circuit has now vacated this Court's order and returned the case to this Court for further proceedings.[2]

Specifically, the Seventh Circuit requests that this Court provide additional explanation concerning two aspects of this Court's April 19, 2004 finding. First, the Seventh Circuit

---

[1] Ultimately, Babar Shah pled guilty to the charges he faced as a result of this incident.

[2] In the interim, the case was remanded the first time as described above.

notes that although this Court conducted a plenary hearing on the issue and carefully examined each factor relating to reasonable suspicion, the Seventh Circuit remains uncertain as to whether this Court actually evaluated the underlying situation from a proper "totality of the circumstances" perspective. Second, the Seventh Circuit requests more detailed and more explicit findings concerning this Court's suggestion that Officer Reichert was not a credible witness.

To comply with this task, this Court solicited briefs from the parties, reviewed the transcript of the suppression hearing, and reviewed its personal notes taken at that hearing.

### Facts

The factual background has been delineated in the Seventh Circuit's opinion and does not need to be repeated here except to the extent necessary to comply with the remand order.

### Analysis

When determining whether a police officer had reasonable suspicion to stop an individual, the district court must evaluate the "totality of the circumstances" to assess whether the detaining officer has a "particularized and objective basis" for suspecting illegal activity. ***United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Kaniff v. United States*, 351 F.3d 780, 785 (7th Cir. 2003).** Under this standard, a court cannot simply evaluate and reject each factor in isolation from the other factors. *See Arvizu*, **534 U.S. at 274.** In light of this guidance, this Court realizes the difficulty that this Court's April 19, 2004 Order presents to the Seventh Circuit. In that Order, as the Seventh Circuit notes, this Court discussed *individually* each factor that officer Reichert cited as increasing his suspicion towards Zambrana, and referred to the relevance of these factors "in isolation." In doing so, this Court did not adequately illustrate the breadth or inclusiveness of its analysis of the underlying circumstances.

This insufficiency was the result of an inadequate *articulation* of this Court's

"totality of the circumstance" evaluation, rather than a reflection of an inadequate "totality of the circumstances" *analysis.*[3] In spite of its lacking articulation, this Court did in fact "view the circumstances in their entirety" in determining whether a reasonable officer in Reichert's position would have believed that he had a "particularized and objective basis" for suspecting illegal activity. *Id.* In so doing, the Court carefully considered "the experience of [Officer Reichert] and the behavior and characteristics of [Zambrana]," *United States v. Odum,* **72 F.3d 1279, 1284 (7th Cir. 1995),** as well as a multitude of additional factors that together comprised the "totality of the circumstances." Nonetheless, because of this Court's insufficient articulation, the Seventh Circuit lacks explanations vital to its decision on appeal. What follows, therefore, is this Court's better articulation of its basis – which remains unaltered – for its April 19, 2004 suppression Order.

As the Seventh Circuit notes, "vital aspects of the overall determination of the reasonable suspicion issue are the *prerogative* and *responsibility* of the trial court; it has the institutional capacity to make findings of historical fact as well as all-important credibility judgments. **See Zambrana slip. op. at 11.** Indeed, because of its ability to view first-hand a witness's demeanor, and to listen to that witness's live testimony, a district court has a "superior institutional capacity" to make credibility judgments. *Id.*

This Court made significant determinations regarding the credibility of Reichert that it initially did not fully articulate in order to avoid publicly tarnishing the reputation of the officer. When credibility conclusions are drawn regarding individual witnesses, this Court employs great care and caution in the words it chooses and conclusions it draws. The law requires such an approach and the witness is entitled to it, especially since every word this Court places in writing becomes available

---

[3] The Zambrana case is the only case in which this Court has granted a suppression motion. That lack of familiarity may account for the incomplete articulation.

on the internet. There was a time when Westlaw and Lexis honored this Court's request to not publish memoranda or orders, because they were non-precedential. This is no longer the case. Now, every docketed order becomes available to the public through PACER, and Westlaw and Lexis frequently publish orders and memoranda of the district courts. Conclusions and findings regarding a person's credibility can have far-reaching effects. The Government's admonition to this Court that "the District Court should be cautious and thorough when making such [credibility] determinations" (Doc. 109, p.3) is well-taken.

Nevertheless, this Court's credibility determination concerning Reichert is *the most significant* factor this Court considered in its "totality of the circumstances" review, and therefore requires thorough exposition. Reichert's lack of credibility as a witness influenced this Court's entire analysis. The bottom line is this: if a credible officer had testified to having witnessed the same facts and having drawn the same conclusions in this case as did Reichert, this Court *may* have been able to find that the totality of the circumstances supported a finding of reasonable suspicion. Largely because of Reichert's infirm credibility, however, the Court concludes the opposite here.

In the original Order suppressing evidence, this Court included a footnote describing Reichert as a "polished" witness. That was not meant to be complimentary. The original version of that statement – which ultimately ended up on the "cutting room floor" – described Reichert as a "polished performer." One reason this Court rejected Reichert's testimony as not credible was because it was so rehearsed, coached, and robotic as to be rote. It was a generic, almost default performance not dependent upon the facts of this case, but suitable for any case in which Reichert might testify to having found "reasonable suspicion." When questioning required him to temporarily stray from this rehearsed script, away from the security of his default testimony, he was caught off-guard. As an example, when asked a question unique to the facts of *this* case – to identify the site

of damage to the vehicle Zambrana was driving – Reichert's answer was inconsistent with objectively verified facts.[4]

Reichert's inconsistency regarding one of the few *objectively* verifiable facts of his narrative further increased this Court's doubt regarding the balance of Reichert's testimony – which consisted primarily of facts that were *not* objectively verifiable. Reichert's conclusions from reading body language "thrown off" involuntarily from people "trafficking in narcotics" requires subjective interpretation that is not verifiable. This Court originally referred to Reichert's methodology as "acting as a human polygraph" and continues to view this practice cautiously due to its potential for misuse. Such methodology is wholly subjective and fraught with potential for guess, speculation, conjecture, and even deceit. That is not to say it is not an available tool in the arsenal of law enforcement, so long as its use is reliable. But in a case such as this – when the credibility of the officer employing such methodology is suspect for several different reasons – the Court is much more hesitant to give such conclusions significant weight.

Additionally, Reichert's recent criminal conviction in federal court negatively impacts this Court's credibility determination regarding his testimony. On August 30, 2005, in criminal case # 05-30129,[5] Reichert pled guilty to violating **15 U.S.C. § 13(a)**, "Selling of Goods in Commerce

---

[4] At the hearing, Reichert testified that there was fresh damage to the *left* side of Zambrana's vehicle (Tr. p. 8). Evidence presented later at the hearing showed that the damage was actually on the right side of Zambrana's vehicle (Tr. p. 102).

[5] According to the docket sheet, Reichert pled guilty to a criminal information in proceedings held before Magistrate Judge Donald Wilkerson in the United States District Court for the Southern District of Illinois. In researching and writing this order, the undersigned learned for the first time that the Reichert case was originally randomly assigned to the undersigned Judge (Doc.1). However, the Defendant and the Government consented to have the magistrate handle the matter (Doc.2) The consent was filed the same day as the criminal information, so there was no notification to the undersigned of the assignment. In this District, consents to the magistrate in criminal cases are rare. The proceedings were obviously orchestrated well in advance because in only *one* day – August 30, 2005 – an information was filed, Reichert waived his right to be tried by a district judge, waived indictment, signed a plea agreement, signed a stipulation of facts, pled guilty, and was

at Unreasonably Low Prices Eliminating Competition," a misdemeanor. The charges underlying Reichert's conviction arose out of allegations that he had been selling counterfeit Oakley sunglasses.

As mentioned above, this Court first became aware of those allegations *after* its April 19, 2004 ruling. On May 5, 2005, pursuant to the Seventh Circuit's instructions, this Court held a hearing to determine whether this Court's credibility determination as to Reichert would have been affected had it known of the investigation. The criminal charges had not been levied nor had he pled guilty at that time. The case was in the investigative stage, the allegations were unproven and not admitted by Reichert, and no formal charges had been filed. The court did not know if Reichert was going to be criminally charged locally, federally or at all. A variety of charges could have been filed, including felonies, misdemeanors, or petty offenses. Oakley, Inc., the victim, could have handled the matter solely from a civil standpoint. Given the immature status of these allegations, this Court ruled that the evidence against Reichert would not have affected its previous credibility determination.

However, Reichert's subsequent guilty plea, stipulation of facts and conviction have changed the landscape and developed the record on this issue, leading this Court to reconsider its May 5, 2005 decision. Faced with an immature and undeveloped investigation at the time of that decision, this Court was under the mistaken impression that Reichert's offense did not involve dishonesty or false statements and, therefore, was not admissible pursuant to **FEDERAL RULES OF EVIDENCE 608** and **609.**

---

sentenced.
Notably, this Court was never notified of the Reichert plea. This is particularly curious in light of the fact that the United States Attorney's office did inform this Court of the original investigation. This handling of the Reichert plea kept this Court from knowing the Reichert case came to fruition and additional information crucial to Reichert's credibility had developed. This Court is not privy to whether Zambrana's counsel or the Court of Appeals was informed of these developments.

Although the *elements* required to prove a violation of **15 U.S.C. § 13(a)** do not expressly mention dishonesty or false statements, this Court finds the *true* nature of Reichert's federal crime is better illuminated by the developed record and the actual facts upon which the charge is based. The information to which Reichert pled guilty charges him with operating a business which sold imitation name-brand sunglasses. In the "Stipulation of Facts" agreed to and signed by Reichert and the Government (Doc. 5, Case # 05-30129), Reichert admits that his business sold "knock-off" sunglasses that were "manufactured, distributed, and *sold to look like Oakley sunglasses*." ***Id.*** In other words, Reichert pled guilty to unlawfully selling goods which were represented to be something they were not. Reichert thereby engaged in misrepresentation, deceit, and falsification. In light of this information, this Court finds that the conduct underlying Reichert's conviction comprised "specific instances of conduct ... probative of truthfulness or untruthfulness" which may be considered in evaluating his credibility, pursuant to Rule 608(b).

Independent of Rule 608(b)**,** Reichert's conviction *itself* would be admissible for the purpose of attacking Reichert's credibility under Rule 609(a)(2). Rule 609(a)(2) provides for impeachment of a witness with evidence of any crime including "dishonesty or false statement." The advisory committee notes accompanying Rule 609 make clear that the phrase "dishonesty or false statement" includes "any ... offense in the nature of *crimen falsi,* [the] commission of which involves *some element of deceit, untruthfulness, or falsification* bearing on the accused's propensity to testify truthfully." **FED. R. EVID. 609 adv. comm. note.** The selling of counterfeit name-brand sunglasses involves an "element of deceit ... [and] falsification" that bears upon Reichert's propensity to testify truthfully within the meaning of the rule.

In light of the *developed* record concerning Reichert's undisputed crime, this Court considers this evidence as further proof that Reichert's credibility as a witness has been damaged.

Although Reichert's conviction only recently became known to this Court, according to Seventh Circuit guidance, "the scope of [a] remand is determined ... by inference from the opinion as a whole." *United States v. Parker,* **101 F.3d 527, 528 (7th Cir. 1996).** Without expressly or impliedly limiting the scope of this Court's review, the Seventh Circuit has asked this Court for "a more explicit statement" concerning "what weight ought to be given particular testimony." **Zambrana slip. op. at 13.** Accordingly, this Court offers the foregoing information to allow the Seventh Circuit to be fully informed in reviewing this Court's credibility determination as to Reichert.

Stated simply, this Court finds the testimony that came from Officer Reichert suspect and shrouded in doubt. Because of the strictures of the criminal justice system, Zambrana did what is very common for defendants to do in his situation: he chose not to testify at the evidentiary hearing. Consequently, this Court's difficulty in gathering credible information upon which to base its analysis was further compounded by the fact that Reichert was the *only* source presented to this Court with first-hand knowledge of *all* the events leading up to the search of Zambrana's vehicle. Having found Reichert's credibility lacking, this Court had no choice but to find that the Government failed to sustain its burden of showing reasonable suspicion under the unique circumstances of this case.

Moreover, this Court also recognized that, to an impermissible extent, Reichert's testimony was calculated and rehearsed *simply* to satisfy a "totality of the circumstances" test. Reichert testified at the hearing that he teaches other law enforcement personnel "Aggressive Criminal Patrol" which includes "pre-stop indicators - what to look for before you stop a car, [and] immediately after the car is stopped, how to obtain body language and identify deceptive body language...." Furthermore, Reichert made clear that he understands what a Judge might find persuasive in making a reasonable suspicion determination by stating that "whether or not [a situation] looks suspicious ... depends on the totality of the circumstances," and confirming that he

teaches this principle in his classes.

In the field, and before this Court during the evidentiary hearing, Reichert simply pulled from the "totality of the circumstances" each and every factor that might heighten an officer's finding of reasonable suspicion – while completely ignoring non-suspicious explanations and factors. The Government and Reichert seem to have expected this Court simply to "add up" these factors to produce a sum of "reasonable suspicion."

However, as the Seventh Circuit notes, "although the officers may be seasoned in the practical exigencies of law enforcement, the United States district judge is expert in the requirements of the Constitution, and it is the standards of the Constitution that must prevail." **Zambrana slip. op. at 11**. The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure ... against unreasonable searches and seizures." The burden of showing that a search or seizure was not unreasonable – in this case the burden of showing "reasonable suspicion" – rests upon the *Government*. ***Illinois v. Wardlow*, 528 U.S. 119, 140 (2000)("[i]t is the State's burden to articulate facts sufficient to support reasonable suspicion").**

By simply adding up "suspicious" factors while ignoring non-suspicious or mitigating factors, Reichert misused the "totality of the circumstances" principle as a sword to unjustly pierce Zambrana's cloak of Fourth Amendment protection. A proper "totality of the circumstances" review demands that the decision-maker look at the circumstances in their *entirety* – taking into account not only those factors that might increase an officer's level of suspicion but also all factors that should *reduce* a reasonable officer's suspicions.

With these principles in mind, the Court now re-articulates the "totality of the circumstances" review it used in assessing whether Reichert had a "particularized and objective basis" for suspecting illegal activity. ***Arvizu,* 534 U.S. at 273;** ***Kaniff,* 351 F.3d at 785.** In doing so,

this Court is *supplementing* its previous Order, not supplanting it.

While testifying, Officer Reichert initially stated that he "noticed [Zambrana's vehicle] *hit* the white center divider lane that marks the lanes of the traffic" (Tr. p.8)(emphasis added). It was counsel for the Government, not Reichert himself, who first characterized this event as "crossing the white divider line" (Tr. p. 8). This Court notes that Reichert himself first used the word "hit" – which to this Court indicates that, whether Zambrana's car actually "hit" or "crossed" the white line, the alleged infraction occurred very briefly. This observation is significant, especially from a totality viewpoint. Although this Court found that the violation provided probable cause[6] for Reichert to pull Zambrana over, Reichert's testimony indicates that Zambrana's violation was extremely minor. Consequently, neither Zambrana nor his passenger may have realized that they had broken the law. According to Reichert's testimony, Zambrana's vehicle thereafter continued down the highway in a completely normal manner.

While perhaps it was not apparent to Reichert, this Court is convinced that a reasonable officer in Reichert's position would have considered the possibility that Zambrana was ignorant of his minor transgression. A reasonable officer, then, would have realized how overreaching Reichert's subsequent behavior might have been perceived by the two passengers.

As Reichert testified, upon seeing Zambrana breaking the law, he did not activate his lights or pull him over. Instead, he pulled his car up next to Zambrana's and stared into the vehicle,

---

[6] Notably, this Court gave the Government the benefit of the doubt regarding whether Reichert even had probable cause to stop Zambrana. As mentioned, Reichert initially referred to Zambrana's actions as "hit[ting]" the white line. It was not until *after* counsel for the Government re-phrased Reichert's testimony as "crossing" the white line that Reichert himself used that term. According to the Supreme Court of the State of Illinois, a motorist violates **625 ILCS 5/11-709(a)** when that motorist "*crosses over* a lane line..." ***People v. Smith,* 172 Ill.2d 289, 296-97 (Ill. 1996)(emphasis added).** Under Illinois law, it is not a violation of the law for a vehicle to simply "hit" or touch a white divider line.

attempting to make eye contact with Zambrana. Despite the negative implications Reichert applies to Zambrana's "dead stare" at the road, any reasonable officer would consider prudent a driver who looks ahead at the road while driving 55 miles per hour on a highway. And, in any event, this Court questions Reichert's ability to discern a "dead stare" from a "focused stare" or a "diligent stare" when Reichert admittedly never made eye contact with Zambrana.

According to Reichert's testimony, he continued staring at Zambrana for *at least* three-quarters of a mile. Zambrana, however, kept his eyes on the road throughout. Reichert determined that this was suspicious, in light of the fact that "most people look down at the speedometer [to] make sure they are not speeding...or...look over at [him]...[to] make sure [he] is not trying to pull them over" (Tr. p. 11). Reichert's testimony that he has pulled over drivers who failed to make eye contact with him is troubling, because that is not a violation of the traffic laws of the State of Illinois. Nonetheless, Zambrana – perhaps convinced he was not speeding nor had done anything that might merit his being pulled over – did not make eye contact with Reichert. Deeming this "suspicious," Reichert then pulled Zambrana over.

Although Reichert's reasoning and behavior itself is questionable, perhaps even more important to a proper totality of the circumstances review is the *effect* Reichert's behavior likely had on Zambrana and his passenger. Zambrana and his passenger Shah may not have felt particularly comfortable with a police officer driving next to them and staring at them for however long it took to travel a mile, while all the time having no idea that they had even committed a traffic violation. This Court believes that a reasonable officer in Reichert's position would have realized that his behavior might frighten, alarm, or irritate the two men. Reichert – perhaps blinded by his singular and aggressive pursuit of "suspicious" indicators – apparently refused to entertain these possibilities as the cause of Zambrana's later-observed "nervousness."

Instead, Reichert continued to act in a manner that might have seriously alarmed the two men. After pulling the men over on the highway, Reichert exited his vehicle, and without even mentioning to the men why he had pulled them over, directed them off of the public roadway to an *abandoned* gas station. It would be reasonable for this developmenet to engender nervousness in the two men.

In light of the totality of this situation, this Court *and* a reasonable officer in Reichert's position might have found it understandable, then, that Zambrana's hands indicated that he may have been "a little more nervous" than other motorists who had previously been stopped. All things considered, it is understandable that there might exist slight inconsistencies between the statements Reichert claims Zambrana made and the statements Reichert claims Shah made as to the purpose of their trip. In response to Reichert's request for identification, Shah, the passenger, presented a military ID. Reichert considered this suspicious, claiming Shad did so to present a "good guy" image. It is unreasonable for an officer in Reichert's position to draw such a conclusion. Shah was in the military. There is nothing sinister about presenting identification from the military, especially since he was not required to tender a driver's license as a passenger.

In light of Reichert's behavior, and in light of the totality of the circumstances, this Court finds that *all* of the "nervous" behavior that Reichert immediately deemed "suspicious," could in fact be viewed as rather understandable and innocent. A *reasonable* officer in Reichert's position would have considered the several alternative explanations that the circumstances presented for the "suspicious" behavior exhibited by the two men. Reichert displayed an unreasonable lack of introspection and an unreasonable lack of objective observation in failing to do so.

Other than Zambrana's understandably "nervous" behavior, Reichert based his finding of reasonable suspicion on a few additional factors: (1) the vehicle was a rental car driven by

Instead, Reichert continued to act in a manner that might have seriously alarmed the two men. After pulling the men over on the highway, Reichert exited his vehicle, and without even mentioning to the men why he had pulled them over, directed them off of the public roadway to an *abandoned* gas station. It would be reasonable for this developmenet to engender nervousness in the two men.

In light of the totality of this situation, this Court *and* a reasonable officer in Reichert's position might have found it understandable, then, that Zambrana's hands indicated that he may have been "a little more nervous" than other motorists who had previously been stopped. All things considered, it is understandable that there might exist slight inconsistencies between the statements Reichert claims Zambrana made and the statements Reichert claims Shah made as to the purpose of their trip. In response to Reichert's request for identification, Shah, the passenger, presented a military ID. Reichert considered this suspicious, claiming Shad did so to present a "good guy" image. It is unreasonable for an officer in Reichert's position to draw such a conclusion. Shah was in the military. There is nothing sinister about presenting identification from the military, especially since he was not required to tender a driver's license as a passenger.

In light of Reichert's behavior, and in light of the totality of the circumstances, this Court finds that *all* of the "nervous" behavior that Reichert immediately deemed "suspicious," could in fact be viewed as rather understandable and innocent. A *reasonable* officer in Reichert's position would have considered the several alternative explanations that the circumstances presented for the "suspicious" behavior exhibited by the two men. Reichert displayed an unreasonable lack of introspection and an unreasonable lack of objective observation in failing to do so.

Other than Zambrana's understandably "nervous" behavior, Reichert based his finding of reasonable suspicion on a few additional factors: (1) the vehicle was a rental car driven by

someone other than the renter, (2) there was only one piece of luggage in the back seat, (3) the relative brevity of Zambrana and Shah's trip to California, and (4) Zambrana's "incorrect" answer to Reichert's questions about his criminal record.

Zambrana's inaccurate answers regarding his record may have been the result of a layperson's misunderstanding of the difference between an "arrest" and a "conviction." The inaccurate answer might have been the result of either Zambrana's not understanding or not hearing correctly Reichert's questioning. Nevertheless, a reasonable officer in Reichert's position might have considered that the *honesty* displayed by Zambrana in immediately and candidly admitting that he had *a* criminal history might outweigh any inconsistency regarding the *specifics* of that history in Zambrana's same statement.

Further, in isolation – *and* in light of the totality of the circumstances – this Court disagrees that there is *anything* significantly suspicious in a motorist having one piece of luggage in their backseat. This Court views Reichert's characterization of this fact as "suspicious" as so tenuous that it hardly warrants discussion. The fact that Reichert did so, however, reveals another aspect about Reichert's testimony that affected this Court's credibility determination – Reichert's ability to find "suspicion," no matter how slight, in practically *every* aspect of the underlying circumstances.

Having witnessed Reichert's testimony, this Court is convinced that Reichert also would have deemed the presence of *no* luggage – or several pieces of luggage – in the back seat as suspicious. To further illustrate this point, this Court notes that Reichert testified that he found it suspicious that when Zambrana returned to his car, *while awaiting Reichert's return*, Zambrana "[sat] with the door open." Reichert testified that "there is some reason that he has the door open," and concluded that it was so that "[Zambrana] could possibly run from the scene" (Tr. p. 27). Surely, then, wouldn't *closing* the door indicate that a suspect was getting ready to *drive* away from the

scene? While Reichert might have drawn such a conclusion, this Court is not convinced that a reasonable officer in Reichert's position would have done the same.

This Court does not hesitate to consider that the "experience and specialized training" of Reichert may have allowed him to raise inferences and make deductions from information "that might well elude an untrained person." ***Arvizu,* 534 U.S. at 273.** Nonetheless, determinations of reasonable suspicion still must be based upon "commonsense judgments and inferences about human behavior," ***Wardlow,* 528 U.S. at 125,** and *not* simply an officer's "inchoate and unparticularized suspicion or hunch." ***Terry v. Ohio,* 392 U.S. 1, 27 (1968).**

In the opinion of this Court, the only factors that a reasonable officer in Reichert's position would have considered inherently suspicious are the relative brevity of Zambrana's trip from coast to coast and the fact that the car was rented by a third party who was not a passenger. Nonetheless, the suspicious quality of these factors is mitigated by other events comprising the "totality of the circumstances."

For instance, Zambrana offered an explanation to Reichert as to why a third party had rented the car – that he didn't have a credit card. Moreover, perhaps the *most* suspicious factor of the rental agreement – that the rental agreement limited the car's operation to eastern states[7] and the car was being driven in Illinois – properly was *not* considered by this Court. In his testimony, Reichert mentioned only that he reviewed the agreement and noticed that the car had been rented in Maryland and that the rental agreement listed states other than Illinois in which the car could be operated (Tr. pp. 16-17). At no point in his testimony, however, did Reichert specifically testify that he found this fact suspicious.

In the context of a totality of the circumstances review, any suspicious meaning – as

---

[7] Car rental agreements which permit unlimited mileage often contain geographical restrictions.

well as those facts that support such meaning – must be *articulated* to the courts, "if the courts rather than the police are to be the ultimate enforcers of Fourth Amendment guarantees." **Brown v. Texas, 443 U.S. 47, 52 (1979).** Although Reichert testified at length that he considered suspicious the fact that the car was rented by a third party, he did not indicate that he found Zambrana's violation of the agreement suspicious. Consequently, this Court did not consider that factor in its own review.

Moreover, Zambrana's reason for going to California – to visit a friend who was preparing for an imminent departure from the country – could be considered a legitimate explanation for the brevity of the trip. This Court is not implying that Reichert need have believed these explanations – only that considering them could have lowered his index of suspicion.

Further, despite Reichert's in-court testimony as to how "suspicious" each of the aforementioned factors appeared to him, Reichert knew that they did not provide him with a legal basis to detain Zambrana and search his car. After questioning Zambrana, making numerous observations concerning Zambrana and his passenger's demeanor, and reviewing Zambrana's rental agreement, Reichert "advised [Zambrana] that he was free to leave" (Tr. p. 28).

However, Reichert decided to continue questioning Zambrana. According to Reichert, as Zambrana was returning to his car, Reichert asked him "if he would not mind speaking to [him] for a few minutes before [he] left" (Tr. p. 28). Zambrana agreed and Reichert resumed questioning him, asking him "rolling no" questions and analyzing his replies.

Again, regardless of Reichert's determinations that Zambrana's replies and lack of eye contact during this questioning were "suspicious," Reichert's subsequent actions indicate that he knew that he *still* had no "reasonable suspicion" to search Zambrana's car. At that point, rather than simply informing Zambrana that he would be searching his car, Reichert requested Zambrana's *permission* to conduct a search. Inexplicably (yet not surprising to this Court), Reichert viewed

Zambrana's denial as "suspicious" and advised Zambrana that he was detaining his car for a canine search.

## Conclusion

This Court reaffirms its determination that officer Reichert did *not* have reasonable suspicion to detain Zambrana and conduct a search of his car. Reichert's lack of credibility "poisoned the well" of information from which the Court made its determination and made it impossible for this Court to make such a finding.

For the reasons stated in this Court's April 19, 2004 Order – as explained and supplemented by the instant Memorandum and Order – Zambrana's motion to suppress narcotics found in his rental car, as well as statements made by Zambrana and co-defendant Shah is **GRANTED.**

**IT IS SO ORDERED.**

DATED this 30th day of November, 2005.

s/ Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge